UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JASON JONES,

        Plaintiff,

v.                                          CAUSE NO. 3:20-CV-511 DRL

WEXFORD OF INDIANA,

        Defendant.

OPINION AND ORDER

Jason Jones, a prisoner without a lawyer, proceeds on one claim "against Wexford of Indiana for allegedly maintaining a policy or practice of failing to properly train medical staff to properly diagnose and treat prisoners that acted as the moving forced for the inadequate treatment for his left knee injury[.]" ECF 5 at 3. Wexford filed a summary judgment motion. Mr. Jones filed a response, and Wexford filed a reply. The summary judgment motion is now fully briefed and ripe for ruling.

FACTS

On September 25, 2019, Mr. Jones was working in the Westville Correctional Facility's (WCF) production kitchen when a cart he was pushing fell over onto his leg. ECF 59-1 at 4. He had bruising and abrasions on his leg, an indentation on his kneecap, and he believed he had loose cartilage in his knee. *Id.* at 5. Medical staff took him by wheelchair to the onsite urgent care facility, where they wrapped his leg and provided him with Tylenol, crutches, and a work restriction pass. *Id.* at 6. About a week later,

medical staff performed an x-ray on his leg, which revealed no fractures or abnormalities. *Id.* at 6-7. Mr. Jones did not disagree with the x-ray's findings, but he believed he needed an MRI to check for muscle damage, loose cartilage, and tissue damage. *Id.* at 7.

After Mr. Jones received the results from the x-ray, he did not submit any health care requests for several months. *Id.* at 6, 8. Mr. Jones first submitted a health care request on March 26, 2020, asserting he had a bone spur above his left knee, was in severe pain, and needed to see a medical professional as soon as possible. ECF 7-2 at 11. The medical staff responded to this request, stating no bone spur was seen on the x-ray and instructing Mr. Jones to discuss the issue at his next provider visit. *Id.*[1] On April 8, 2020, Mr. Jones submitted a second health care request stating he was in pain which he believed was caused by "detached cartilage" above his knee. *Id.* at 12. On April 14, 2020, before Mr. Jones received a response to his second health care request, he submitted a third health care request stating that an unattached bone in his leg was causing him pain. *Id.* at 13. On April 17, 2020, Mr. Jones filed a fourth health care request stating he was experiencing leg pain and requesting to see a medical provider. *Id.* at 14. On April 22, 2020, the medical staff responded to Mr. Jones' second health care request, stating the x-ray results were negative for any abnormalities and instructing Mr. Jones to obtain over-the-counter pain relief from the commissary and resubmit a health care request if he had not improved when "restrictions lifted." *Id.* at 12. The medical staff responded to Mr. Jones' fourth health care request that same day, stating the issue was not visualized on his previous x-

---

[1] It is unclear from the record when the medical staff responded to this health care request.

2

ray and sick call was currently restricted due to the COVID-19 pandemic. *Id.* at 14. The next day, the medical staff responded to Mr. Jones' third health care request, referring Mr. Jones to its response to his second health care request. *Id.* at 13. Mr. Jones never met with any medical personnel between the time he filed these health care requests and the time he was released from WCF in July 2020. ECF 59-1 at 8-9.

After his release from WCF, Mr. Jones saw a physician around August or September 2020 and was scheduled to receive physical therapy. *Id.* at 9. However, Mr. Jones never attended physical therapy because he was reincarcerated at the Howard County Jail in October 2020. *Id.* at 9-10. He has not received or asked for any medical treatment related to his knee pain at Howard County Jail. *Id.* at 10. Because neither party disputes these facts, the court accepts them as undisputed.

## ANALYSIS

Mr. Jones was granted leave to proceed on a *Monell* claim against Wexford based on his allegation that "Wexford maintains a policy or practice of failing to train medical staff to diagnose and treat prisoners properly." ECF 5 at 2. *See Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). A private company performing a state function, such as Wexford, can be held liable to the same extent as a municipal entity under *Monell*. *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private company providing medical care at correctional facility). Under *Monell*, 436 U.S. at 694, a municipality may only be held liable for constitutional violations caused by the municipality through its own policy, practice, or custom. To recover, a plaintiff must establish that (1) he suffered a deprivation of a federal right (2) as a result of an express

3

municipal policy, a widespread custom, or a deliberate act of a decisionmaker with final policymaking authority for the municipality that (3) was the proximate cause of his injury. *King v. Kramer*, 763 F.3d 635, 649 (7th Cir. 2014).

*Monell* does not allow liability based on unconstitutional acts of Wexford employees, but instead based on "an unconstitutional policy or custom of the corporation itself." *Shields v. Ill. Dept. of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). There are three ways in which a plaintiff may prove this:

> First, she might show that the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Second, she might prove that the constitutional deprivation was visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels. Third, the plaintiff might be able to show that a government's policy or custom is made by those whose edicts or acts may fairly be said to represent official policy. As we put the point in one case, a person who wants to impose liability on a municipality for a constitutional tort must show that the tort was committed (that is, authorized or directed) at the policymaking level of government. Either the content of an official policy, a decision by a final decisionmaker, or evidence of custom will suffice.

*Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017) (*en banc*) (quotation marks, citations, and internal alterations omitted).

Here, Mr. Jones has not identified any specific Wexford policy that is unconstitutional, nor has he alleged that an individual with policymaking authority violated his constitutional rights. Thus, to survive summary judgment, Mr. Jones must provide evidence the constitutional deprivation was caused by Wexford's "widespread custom" of failing to train medical staff to diagnose and treat prisoners properly. *See id.*; *King*, 763 F.3d at 649. To do so, Mr. Jones must show "a series of bad acts" that create the

inference that "the policy-making level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least condoned . . . the misconduct of subordinate officers." *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). Moreover, "the path to *Monell* liability based on inaction is steeper because, unlike in a case of affirmative [corporate] action, a failure to do something could be inadvertent and the connection between inaction and a resulting injury is more tenuous." *J.K.J. v. Polk Cty.*, 960 F.3d 367, 378 (7th Cir. 2020). "For these reasons, where a plaintiff claims that the [corporate entity] has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the [corporate entity] is not held liable solely for the actions of its employee." *Id.* (quotation marks and alterations omitted).

There is no evidence by which a reasonable jury could conclude that any constitutional deprivation was caused by a widespread custom of Wexford of failing to train medical staff to diagnose and treat prisoners properly. Instead, the evidence shows Wexford treated Mr. Jones' knee injury by wrapping his knee, performing an x-ray that had no significant findings, and providing him with Tylenol, crutches, and work restrictions. Mr. Jones provides evidence he submitted four health care requests over a three-week span requesting additional treatment for his knee, and Wexford responded to these requests by noting his complaints were inconsistent with his x-ray results, advising him that sick call was currently restricted due to the COVID-19 pandemic, instructing him to obtain over-the-counter medications, and instructing him to resubmit a health care request if he had not seen improvements once the restrictions were lifted.

5

There is no evidence Mr. Jones submitted another health care request after April 2020, and it is undisputed he was released from WCF in July 2020. Thus, based on the evidence in the record, no reasonable jury could conclude (1) Wexford had a widespread custom of failing to train medical staff to diagnose and treat prisoners properly, and (2) this custom caused a violation of Mr. Jones' Eighth Amendment rights.

For these reasons, the court:

(1) GRANTS Wexford's summary judgment motion (ECF 57); and

(2) DIRECTS the clerk to enter judgment in favor of Wexford and against Jason Jones.

SO ORDERED.

January 7, 2022                    *s/ Damon R. Leichty*
                                   Judge, United States District Court